366 So.2d 918 (1978)
Dick STANSBURY, Individually and as Administrator of the Estate of his minor son, David Stansbury, Plaintiff and Appellee,
v.
Donald HOVER and National American Insurance Co., Edmay Prosser Patterson, Berwick Bay Oil Co. & Peninsular Fire Insurance Co. (Amended 2-28-77 Edith Mae Patterson Hover, Edmay Prosser Patterson, Individually and as Executrix of the Estate of Edward J. Patterson, Sr., Edward J. Patterson, Jr. and Brenda Patterson) (Amended 6-9-77 Chicago Insurance Co.), Defendants and Appellants.
No. 12211.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
Rehearing Denied January 16, 1979.
*920 Kim P. Stansbury, Morgan City, for plaintiff and appellee.
William O. Bonin, New Iberia, for Berwick Bay Oil Co.
Paul B. Deal, New Orleans, for Edmay Patterson and Nat. American Ins. Co.
Eldon T. Harvey, III, New Orleans, for Chicago Ins. Co.
John J. Cooper, New Orleans, for Donald Hover, Peninsular Fire Ins. Co. and Edith Mae Patterson Hover.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
Defendants appeal a judgment in a maritime personal injury action in favor of plaintiffs in the amount of $225,000 plus $12,878.75 medical expenses. Plaintiffs have answered the appeal, seeking an increase in the award of damages.
On May 25, 1975, David Stansbury, age 14, was injured when he went overboard from a moving 1972 Ranger fiberglass bass boat while on a pleasure outing with three friends, Jeff Hover, Eddie Wasson and Paul Delaune. David's injury resulted when the ski rope he was winding at the time tightened on his arm after he fell out of the boat and into the water. As a result of the injury, David's left arm was amputated just above the elbow.
The action was originally brought on April 29, 1976, against Donald Hover, the father of Jeff Hover, the boy operating the boat, and National American Insurance Company (hereinafter designated as "National American"), as having in force a policy of insurance covering the ownership, use and operation of the bass boat. Plaintiffs alleged acts of negligence of both Donald Hover, for failure to properly instruct and caution the boys, and Jeff Hover, for acts surrounding his operation of the boat.
Plaintiff filed an amended and supplemental petition on May 25, 1976, joining as defendants, Edmay Prosser Patterson in her capacity as executrix of the estate of Edward J. Patterson, Sr., the owner of the boat prior to his death in 1974; Peninsular Fire Insurance Company (hereinafter designated as "Peninsular"), the issuer of a homeowner's policy in the name of Donald Hover; and Berwick Bay Oil Company as owner of the boat. Berwick Bay Oil Company was dismissed on motion for summary judgment and is not before this Court. Plaintiffs alleged various acts of negligence on the part of Edmay Patterson, inter alia, failure to maintain the vessel in proper condition and to warn of the defective condition of the boat. All defendants entered a general denial. We note that a judgment of possession terminating the succession proceedings was rendered on June 14, 1976.
On February 28, 1977, plaintiffs filed a second supplemental and amending petition joining as additional defendants Edward J. Patterson, Jr., Brenda Patterson, Edith Mae Patterson, Hover and Edmay Prosser Patterson, individually. Plaintiffs sought recovery against these defendants under LSA-R.S. 34:850.24 alleging that they were all co-owners of the boat at the time of the accident and that the vessel was being used by the Hovers with their express or implied permission when Jeff Hover negligently injured David Stansbury. No answer was ever filed by Edward J. Patterson, Jr., nor a default judgment ever taken, and consequently, no judgment has or could have been rendered against him. Edmay Prosser Patterson, Edith Mae Patterson Hover and Brenda Patterson filed general denials and pled prescription of one year as a bar to the suit.
In answer to the second supplemental and amending petition, Donald Hover and Peninsular filed a general denial and a third party demand against National American and Chicago Insurance Company (hereinafter *921 designated as "Chicago"), alleging the third party defendants to be issuers of two policies providing coverage for the incident. The National American policy in the face amount of $100,000 insured persons operating the boat with the permission of the owner, and the Chicago policy in the amount of $1,000,000 was issued to the estate of Edward J. Patterson, Sr., and Edmay Prosser Patterson providing coverage for persons operating the boat with the permission of the owner. Third party plaintiffs sought indemnity on the ground that Peninsular's coverage was "excess" to the other two policies in force.
National American answered the third party petition denying that it provided coverage for Donald Hover. National American also filed a separate third party demand against Chicago and Peninsular averring that should it be found that Edmay and Brenda Patterson would be vicariously liable under R.S. 34:850.24, then it would be entitled to judgment of indemnity against the third party defendants as primary and excess insurers of the Hovers.
Finally, plaintiffs filed a third supplemental and amending petition joining as an additional defendant Chicago as the insurer of a $1,000,000 insurance policy in force at the time of the accident and covering the risk encountered as an excess insurer above and beyond the coverage provided by Peninsular to the Hovers.
For the purposes of "clarification," Peninsular was the homeowner's insurer of Donald Hover under a policy providing coverage in the sum of $100,000. National American was the homeowner's insurer of Edward J. Patterson, Sr., which policy included a special rider providing coverage for the boat in the sum of $100,000. Finally, Chicago was the excess insurer of Edward J. Patterson, Sr., under a policy providing general liability coverage in the sum of $1,000,000.

FACTS
On May 25, 1975, Jeff Hover, David Stansbury, Eddie Wasson and Paul Delaune were on a boating outing on Lake Palourde near Morgan City, Louisiana. All four boys were approximately fifteen years old. The craft was formerly owned by Edward J. Patterson, Sr., who died in 1974. At the time of the accident, the boat was used primarily by Edward J. Patterson, Jr., or Donald Hover and his family. Hover came to use the boat since his wife Edith Mae was the daughter of Edward J. Patterson, Sr. Donald Hover had accompanied the boys to the camp near Lake Palourde.
On this particular day, Jeff Hover, son of Donald Hover, was operating the boat. David Stansbury was an inexperienced skier who had only skied once before and was unable to get up that day. At the time of the accident, Paul Delaune was on the bank a short distance away visiting a girlfriend. Eddie Wasson was skiing while Jeff drove the boat and David set up front as lookout.
When Eddie finished skiing, Jeff stopped to pick him up from the water, turning off the engine after coming to a stop. David helped Eddie put the skis in the boat and moved to the rear as Eddie climbed into the front.
At this point David asked Jeff if the ski rope should be pulled into the boat. Jeff replied in the affirmative and also informed the group that they were going to pick up Paul, who was waiting on the bank. The rope was attached to the boat by means of a "ski bridle" and David reached over the motor and placed the bridle in the boat. Both Jeff and Eddie watched David as he pulled the bridle into the boat and watched him sit down. Jeff and Eddie continued to discuss Eddie's skiing as Jeff started the engine. Jeff, with the intention of picking up Paul, then accelerated the boat forward.
David had begun winding the rope around his arm and between a "V" made between his thumb and forefinger when Jeff accelerated the boat. The rope, which was nylon, not polypropelene, had sunk beneath the water, although the handle remained floating via a large float. When the boat was accelerated, the rope pulled on David's arm with considerable intensity. This, combined with the force of the acceleration *922 of the boat which tended to move the boat out from under David, caused David to conclude that he would be pulled out of the boat and over the propeller. In order to avoid this imagined danger, he jumped over the side of the boat.
Eddie looked back in time to see David go out of the boat and immediately screamed for Jeff to stop. Jeff reacted instantly by throttling the boat to neutral. Either immediately before or immediately after the motor was turned off, the rope tightened on David's arm, the slack ran out and David's arm was jerked with considerable force.
David was rescued from the water and brought by ambulance to a hospital in Morgan City. Several hours later he was transported to the Ochsner Foundation Hospital in New Orleans where he underwent four operations and vessel transplants over the next two or three weeks in an effort to save the arm. On about the 10th of June, 1975, David's arm was amputated midway between his shoulder and elbow.

FINDINGS OF THE TRIAL COURT
The trial court found that Jeff Hover suddenly, without signal or warning, accelerated the boat forward. The court concluded that the sudden acceleration, combined with the drag of the rope in the water, caused David to jump out of the boat. The trial judge determined that Jeff Hover was grossly negligent for his conduct in moving the boat without fully alerting the passengers that he intended to accelerate suddenly forward, that he was negligent in moving the boat without determining that the ski rope was completely inside the boat after directing the inexperienced David to bring in the rope, that he was negligent in accelerating the boat at a rapid rate of speed when he knew he had a passenger who was not looking at him but had his attention directed toward the rear of the boat and who was at the time pulling an object out of the water into the boat; and finally that Jeff negligently failed to keep a proper lookout.
The trial judge rejected defendants' pleas of contributory negligence on the part of young David. He concluded the suggestion that the accident was caused by David's standing up to wind the rope, losing his balance and falling overboard was unreasonable, noting the implausibility of the proposition that one would stand up in a boat which was being accelerated at such a fast rate of speed. He also rejected the claim that it was negligent for David to wind the rope in the manner that he did. The trial judge concluded that the method was reasonably safe under the circumstances since at the time David began, the boat was immobile and David could not reasonably have foreseen that Jeff would suddenly accelerate the boat in the manner in which he did.
The trial judge also found Donald Hover guilty of independent acts of negligence resulting in the injury of David, consisting of failure to give proper instructions or training to Jeff Hover in the procedures used in water skiing. Such failure consisted of not instructing the boys of the dangers of sudden acceleration or the necessity of keeping a proper lookout.
The trial court rendered judgment against all defendants, in solido, for the full amount hereinabove stated.

ASSIGNMENTS OF ERROR
All defendants appealed the liability issue of Jeff and Donald Hover and the trial judge's determination of negligence. Also, all defendants urged on appeal that even if this Court should affirm a finding of negligence on the Hovers' part, the trial judge, nevertheless, erred in not finding that David Stansbury was negligent for using the method of winding the rope which he employed and for standing up in a moving boat.
Edith Patterson Hover, Edmay and Brenda Patterson, Peninsular and National American all appealed the court's determination that LSA-R.S. 34:850.24 was applicable to a maritime personal injury case and the finding that the heirs were liable in solido with Donald Hover thereunder. Edmay and Brenda Patterson also appealed *923 the denial of their plea of prescription. National American assigned as error the court's finding that they provided coverage in favor of the Hovers and the court's denial of its third party demand for indemnity against Peninsular and Chicago as primary and excess insurers of the Hovers.
Finally, all defendants appealed the damage award claiming it to be excessive.

NEGLIGENCE OF JEFF HOVER
Jeff Hover owed a duty of ordinary and reasonable care not to expose his passengers to an unreasonable risk of harm. We believe this duty would require that he not move the boat forward after instructing David to pull the rope in from the rear of the boat until David was safely seated and the rope safely secure within the boat. To do so would create a risk that David could become entangled in the rope and fall or be pulled overboard by the rope and suffer serious injury. While the record reflects that Jeff watched David sit down after retrieving the bridle, it is clear from that point Jeff never looked back to determine if the rope was in the boat. Although we have doubts as to whether, in this particular case, the ski rope would have actually pulled David out of the boat, we do agree that the inexperienced David could have reasonably believed that he was being pulled from the boat because of the drag placed on the ski rope by the acceleration of the boat.
We, therefore, find that the risk of harm which David encountered fell within the scope of Jeff's duty and conclude that his failure in this regard amounted to actionable negligence.

NEGLIGENCE OF DONALD HOVER
Assigned as error is the trial judge's finding of individual negligence on Mr. Hover's part for failure to properly instruct the four boys on safety procedure for water skiing and operation of the boat.
We find it unnecessary to consider this assignment of error in view of LSA-C.C. art. 2318 which provides for the vicarious liability of the father for damages occasioned by his minor son.

CONTRIBUTORY NEGLIGENCE OF DAVID STANSBURY
All appellants have assigned as error the trial court's failure to find that David's conduct was negligent and contributed to his own injury.
Considering David's inexperience, we regard his belief that he was being pulled over the boat motor by the drag of the ski rope as reasonable. His immediate concern was that he would be drawn into the propeller of the boat's motor, and being faced with this emergency, he jumped overboard. While a calm, cool and experienced skier would have attempted to remove the rope from his arm or perhaps disregarded the drag of the ski rope as a danger, David was only fourteen years of age and inexperienced in water skiing to such an extent that he was unsuccessful in his attempts to get up on the skis. We are of the opinion that his election to jump overboard was occasioned by the sudden emergency with which he was faced and that he acted reasonably under the circumstances.
"One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. * * *"
Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 389 (1972).
We, therefore, affirm the finding of the trial court rejecting the claims that David's own negligence contributed to his injury.

APPLICABILITY OF LSA-R.S. 34:850.24
The trial judge found Edmay and Brenda Patterson, Edith Mae Patterson Hover and National American liable under LSA-R.S. 34:850.24:

*924 "The owner of a watercraft shall be liable for any injury or damage occasioned by the negligent operation of such watercraft, whether such negligence consists of a violation of the provisions of the statutes of this state, or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless such watercraft is being used with his or her express or implied consent. It shall be presumed that such watercraft is being operated with the knowledge and consent of the owner if, at the time of the injury or damage, it is under the control of his or her husband, wife, father, mother, brother, sister, son, daughter or other immediate member of the family. * * *"
Appellants claim that the trial court erred in finding the statute applicable to a maritime personal injury case. It is true that in a maritime personal injury case brought in state court, the state court must apply the federal substantive law. Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); St. Hilaire Moye v. Henderson, 496 F.2d 973 (8th Cir. 1974); Beavers v. Butler, 188 So.2d 725 (La.App. 2nd Cir. 1966), writ refused, 249 La. 739, 190 So.2d 242 (1966). Regarding state laws which are supplemental to, and not inconsistent with, the federal substantive maritime law, the Eighth Circuit Court of Appeals, in the often-quoted case of St. Hilaire Moye v. Henderson, observed:
"* * * However, a federal court sitting in admiralty need not `invariably refuse to recognize and enforce a liability which the State has established in dealing with a maritime subject. On the contrary, there are numerous instances in which the general maritime law has been modified or supplemented by state action. . .' Just v. Chambers, 312 U.S. 383, 387-388, 61 S.Ct. 687, 691, 85 L.Ed. 903 (1941). * * * The Supreme Court has sustained the application of state laws which broaden the scope of liability beyond the general maritime standard. * * *" (496 F.2d at 980)
R.S. 34:850.24 is found in Louisiana's "Uniform Pleasure Boating Act." As noted in Ratcliff v. United Services Automobile Association, 180 So.2d 58 (La.App. 2nd Cir. 1965), writ refused, 248 La. 528, 180 So.2d 541 (1965), the purpose of the statute is to "provide for the protection and promotion of safety in the operation of motorcraft engaged in recreational boating." (180 So.2d at 60) The statute's purpose is also to provide a financially responsible party to respond in damages for negligent operation of the boat by anyone using a boat with permission of the owner. The concept of vicarious liability is common to our law. [See e. g. LSA-C.C. arts. 2318 (liability of father for damage caused by minor children) and 2320 (liability of master for negligence of his servant).]
We do not believe R.S. 34:850.24 contravenes in any way the maritime law applicable to this case. It is supplementary to that law and merely establishes a rule of financial responsibility in order to encourage more careful supervision of boats by boat owners.
Appellants also claim that Edmay and Brenda Patterson did not consent to the use of the boat by Donald Hover and, therefore, are not liable. The trial judge found that all parties knew that the boat was used by Donald Hover and Edward J. Patterson, Jr. The consent required by R.S. 34:850.24 may be either express or implied. We believe that Donald and Jeff Hover were operating the boat with at least the implied consent of all the co-owners at the time of the accident. Testimony of both Edmay and Brenda Patterson indicated they knew and consented to the use by the Hovers. The trial court's finding in this regard is, therefore, correct.
Appellants also claim R.S. 34:850.24 should not be applied in this case because the statute was not intended to apply to a situation where a boat was in a succession and was fractionally owned by a number of individuals. We disagree. The statute is applicable here since all of the fractional owners expressly or impliedly consented to the use of the boat by the Hover family.
*925 Appellants, Edmay and Brenda Patterson, further resist the statute's application to them, alleging that to do so would violate the benefit of inventory provisions of succession law which are in favor of minor children and widows. Brenda was seventeen at the time of the accident. We reject this argument since both Edmay and Brenda subsequently unconditionally accepted the succession of Edward J. Patterson, Sr., and were sent into possession of the estate. We believe that neither party may now be heard to complain of a debt created while the succession was pending now that they have accepted the succession.

PRESCRIPTION
Edmay and Brenda Patterson, Edith Mae Patterson Hover and National American all urge the prescription of one year as barring the R.S. 34:850.24 claim since the heirs were not joined until February of 1977, over a year and a half after the accident of May 25, 1975.
Counsel for Peninsular suggested in passing that the doctrine of laches should apply to determine whether the claim may still be brought. We find it unnecessary to decide this issue because of our finding that prescription was interrupted as to all heirs by filing of suit against National American on April 29, 1976, and also by filing of suit against Edmay Prosser Patterson as executrix of the estate of Edward J. Patterson, Sr., on May 25, 1976, all as will appear hereinafter.
On May 25, 1976, Edmay Prosser Patterson was joined in her capacity as executrix of the estate of Edward J. Patterson, Sr. In that supplemental and amending petition, plaintiffs averred that the boat was part of the estate of Edward J. Patterson, Sr., and that Edmay Patterson, as executrix, was responsible at all times pertinent for the maintenance, upkeep and supervision of said vessel. We believe that since no judgment of possession had been signed at the time this petition was filed, Edmay Patterson, as executrix of the estate of which the boat was a part, was a proper party defendant. While the heirs may have seizin from the moment of the death of the de cujus, the executrix is the proper party defendant for suits against the estate until a judgment of possession has been signed. LSA-C.C.P. arts. 734, 3249; Gibbs v. Succession of Scott, 265 So.2d 249 (La.App. 3rd Cir. 1972). The judgment of possession was signed on June 14, 1976. We, therefore, find that prescription was interrupted on May 25, 1976, as to all heirs who subsequently unconditionally accepted the succession.
While the above finding is conclusive that prescription was interrupted, we further believe prescription was also interrupted as to all the heirs by filing of suit against National American. Edmay, Brenda and Edith Mae Patterson are solidarily liable as owners under R.S. 34:850.24 and LSA-C.C. art. 2091. It is well settled that an insured and his liability insurer are solidarily liable. Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La. 1973); Hidalgo v. Dupuy, 122 So.2d 639 (La.App. 1st Cir. 1960). Since Edmay, Brenda and Edith Mae Patterson were all insureds under the National American policy, National American is solidarily bound with them. We believe that filing of suit against National American as a liability insurer with a policy of insurance covering the ownership, use and operation of the boat was sufficient to interrupt prescription as to the heirs. Suit against this one defendant interrupted prescription as to all defendants. LSA-R.S. 9: 5801; LSA-C.C. art. 2097; compare Simmons v. Travelers Insurance Company, 295 So.2d 550 (La.App. 3rd Cir. 1974), writs refused, 299 So.2d 795, 796 (1974), with Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La. 1975). See, also, Fontenot v. O'Brien, 361 So.2d 298 (La.App. 1st Cir. 1978).

INSURANCE COVERAGE
The trial court found Peninsular and National American to be co-insurers up to their limits of $100,000 each and Chicago to be the excess insurer for any amount over $200,000. The court also found that Edmay *926 and Brenda Patterson, being only vicariously liable, if they had to pay any part of the judgment, would be entitled to indemnity against the Hovers and the three insurance companies. National American was not entitled to any indemnity against Donald Hover for monies paid out on the R.S. 34:850.24 claim since Hover is an insured under the National American policy.
National American cites as error the finding that Donald Hover was an insured under the omnibus clause. We disagree. The trial judge adopted a portion of counsel's brief as his opinion, and we adopt as our own that part of the trial court's opinion:
"Counsel for National American has contended that upon the death of Mr. E. J. Patterson, Sr., the definition of insured was changed to delete what is normally referred to as the `omnibus insured' clause, that is, the clause that provides that coverage to one using or responsible for the operation of watercraft insured under the policy. Examination of the language of the National American policy shows that this contention is without merit. Mr. Patterson died after the National American policy was issued but before the accident and date of May 25, 1975. Prior to his death, there is no question that Donald and Edith Mae Hover were covered under the National American policy when they used the watercraft in question with Mr. Patterson's permission, which they had. The coverage derives from the following language of the policy:
`8. DEFINITIONS: (Refer to Section II of the Form made a part of this policy for Additional Definitions).
`When used in this policy the following definitions apply:
`a. "Insured" means
'(3) under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
'(a) with respect to . . . watercraft to which this insurance applies, owned by any Insured, any person or organization legally responsible therefor, except a person or organization using or having custody or possession of any such animal or watercraft in the course of his business or without the permission of the owner . . ..'
"Since Donald Hover was legally responsible for the acts of his minor son, Jeff Hover, the quoted language covers him, as well as Edith Mae, who plaintiff's attorney contends is responsible under `owner's responsibility' section of Louisiana Uniform Pleasure Boating Act, La.Rev.Stat. 34:850.24 (1958).
"Learned counsel for National American contends that once the named insured, E. J. Patterson, Sr., died then the foregoing provision was no longer part of the policy. I disagree. The National American policy provides the following provision:
'9. DEATH OF NAMED INSURED: In the event of death of the Named Insured the definition of "Insured" is modified as follows:
`a. The Named Insured shall mean:
`(1) the spouse, if a resident of the household at the time of such death; and
'(2) the legal representative but only with respect to the premises and property of the deceased covered under this policy at the time of such death.
`b. Insured shall also include:
'(1) any member of the deceased's household who was covered under his policy at the time of such death, but only while a resident of the insured premises; and
'(2) with respect to the property of the Named Insured, the person having proper temporary custody thereof, but only until the appointment and qualification of the legal representative.'
Undersigned counsel could find no cases construing the above quoted provisions that are effective upon the death of the named insured. It is thus up to the court to construe the meaning of the "DEATH OF THE NAMED INSURED" provisions. It is fundamental to insurance law that words in an insurance policy should be given their normal and usual meaning. Levy v. Duclaux, 324 So.2d 1 (La.App. 4th Cir. 1975); *927 Atlas Lubricant Corp. v. Federal Ins. Co. of N. J., 293 So.2d 550 (La.App. 4th Cir. 1974). The introductory paragraph of those provisions says that `the definition of "insured" is modified . . .' [Emphasis added] Black's Law Dictionary (4th Ed.) defines the word `modify' as follows"
`To alter; to change in incidental or subordinate features; enlarge, extend; limit, reduce. [Citations omitted]'
It is suggested that if the policy was intended to have the definition of insured changed in its entirety, a word other than `modified' would have been chosen, such as `supersede,' for instance. Then it is interesting to note that the introductory paragraph regarding the new definition of `Named Insured' simply uses the words `shall mean,' whereas the modification regarding insured uses the words `shall also include.' [Emphasis added] Black's Law Dictionary defines the word also as follows: `Besides; as well; in addition; likewise; in like manner; similarly; too; withal; some other thing; including; further; furthermore; in the same manner; moreover; nearly the same as the word "and" or "likewise." [Citations omitted]'
Had it been intended to change the meaning of the definition of `Insured' in its entirety as was apparently intended as respects `Named Insured,' it is suggested that the introductory paragraph would merely have stated `insured shall mean' rather than `insured shall also include.' It is thus clear that the underwriter drafting the policy intended for the new definitions of insured contained in paragraphs 9b(1) and (2) to be in addition to the definitions given for insured in paragraph 8.a(3)(a) and (b). Note also that those definitions specifically refer to `Personal Liability,' `watercraft' and also `vehicle' and they are the clauses of an insurance policy usually termed `omnibus insured' clauses.
"It is therefore suggested, that the omnibus provisions relating to watercraft and which provide a coverage to the Hovers respecting their use of the boat before the death of Mr. Patterson, Sr., also provided coverage after his death when Mrs. Patterson became the new `Named Insured' and owner or part owner of the boat under the community property and succession law of this State. This, I suggest is a `fair, reasonable and sensible construction compatible with the apparent object and plain intentions of the parties as expressed in the words of the [policy agreement.]' Corkern v. Main Ins. Co., Chicago, Ill., 268 So.2d 138, 140 (La.App. 1st Cir. 1972). It is well settled that `limitations and exceptions to coverage of the policy must be clearly expressed.' Thomas v. First National Life Ins. Co., 250 So.2d 42, 43 (La.App. 3d Cir. 1971). The Hovers and Peninsular thus contend that the National American policy covered them for any alleged negligence of Donald Hover, individually, and as the legal representative of his minor son, as well as Edith Mae Patterson Hover for any liability she may have under the boating statute, as respect the use of the Patterson boat on the date of the accident in suit." (Record, pp. 439-443)
Likewise, we find no error in the trial court's finding that Peninsular and National American were co-insurers as a result of mutually repugnant excess insurer clauses which were therefore ineffective.
Regarding third party claims, the trial judge in his opinion said:
"It is believed, that the foregoing disposes of all of the third party claims except the claims of Edmay Prosser Patterson and Brenda Patterson as the insureds of National American. They alleged in their third party petition that, if liable, they are only vicariously liable. They set forth that it is the primary, active negligence of Donald and Jeff Hover that caused the injuries and losses herein. They claim that they are entitled to indemnification. Since the Court finds that Donald Hover is insured under all three policies, their claim for indemnification, should they have to pay any amounts herein, would be against Donald Hover and the three insurance carriers. See APPALACHIAN CORPORATION v. BROOKLYN COOPERAGE COMPANY [151 La. 41], 91 So. 539 (La.1922), and *928 WASHINGTON v. DEGELOS, 312 So.2d 918, (4 C.A. 1975). On page 922, of the latter case, we find the following language:
"`As the doctrine exists in Louisiana, the right to indemnity from the person primarily negligent exists only in favor of one who is vicariously liable for the damages caused because of merely technical or constructive fault. Appalachian Corp. v. Brooklyn Cooperage Co., cited above; Stewart v. Roosevelt Hotel, La.App. 4 Cir., 170 So.2d 681; American Employers Insurance Co. v. Gulf States U. Co., La.App. 1 Cir., 4 So.2d 628. See also Williams v. Marionneaux, 240 La. 713, 124 So.2d 919. The right to indemnity does not exist in favor of a joint tortfeasor whose act or failure in the performance of a duty was a contributory cause of the accident, and there is no right to indemnity where the liability of the one seeking it cannot be regarded as secondary, vicarious, or derivative. Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868; Second Church of Christ Scientist v. Spencer, 230 La. 432, 88 So.2d 810, discussed at 17 La.L.Rev. 348, 350 (1957); Travelers Insurance Co. v. Hardware Mutual Cas. Co., La.App. 3 Cir., 186 So.2d 185 (rendered April 27, 1966).' [Hebert v. Blankenship] [La. App.] 187 So.2d [798] at 803" (Record, pp. 446, 447)
Based upon the above reasoning, the trial court ordered that Edmay and Brenda Patterson were entitled to indemnity against the Hovers and the three insurance companies who insured the Hovers should they have to pay any portion of the judgment. We find no error in the above finding.

DAMAGES
All defendants appealed the award of $225,000 as being excessive. We note that much testimony was taken in this trial regarding the physical and emotional suffering which David has endured since the accident.
When David fell out of the boat, the rope pulled around his left arm with such force as to cut through the flesh and crush the nerve endings. Whatever muscle tissue may have remained was severed completely to the bone when the rope tightened around his arm after the slack ran out. The rope was extracted from David's arm by the ambulance attendants who transported him to the hospital. There is no question that this young man suffered an extremely painful injury.
Young David underwent four different operations in an attempt to save his arm before the decision was made to amputate. Following the operation and continuing up until the time of trial, David had phantom sensations and pains.
The trial judge found David's emotional damage would be long term:
"David Stansbury has suffered tremendous emotional and mental shock and suffering as a result of this injury. It does not take an overactive imagination to realize the mental pain and suffering a young boy this age has in comparing himself to his able bodied and whole contemporaries. It is the age in one's life in which activity is of great importance. Every single activity in which such a person engages brings home the disability which he has in comparison to his fellows. Perhaps he will adjust to some extent in the future, to this disability and this handicap. The Court feels, however, that throughout his life this feeling of inadequacy, when compared with his fellowmen, will always be an emotional and mental problem with him." (Record, p. 451)
Dr. Lynn Hamilton, an orthopedic surgeon, testified that David has a 95 percent permanent partial physical impairment of the left upper extremity and the equivalent of 57 percent permanent partial disability for his entire person. The trial judge also took notice of the severe restrictions the physical impairment would place on David's choice of career opportunities.
We conclude, after carefully examining the evidence of emotional and physical *929 injury and considering future disability as well as future suffering and inconvenience, that an award of $225,000 was proper and not an abuse of the trial court's much discretion in awarding damages. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed, defendants-appellants to pay all costs.
AFFIRMED.