394 So.2d 849 (1981)
Gary L. EWING et ux., Plaintiffs and Appellees-Appellants,
v.
Bernard C. SANSON et al., Defendants,
and
Hartford Accident & Indemnity Company, Defendant, Appellant-Appellee.
No. 7773.
Court of Appeal of Louisiana, Third Circuit.
February 9, 1981.
*850 Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for defendant-appellant.
William Henry Sanders, Jena, and Edward A. Kaplan, Alexandria, for plaintiffs-appellees-appellants.
McLure & McLure, John G. McLure, Alexandria, for defendant-appellee.
Trimble, Randow, Smith & Wilson, James T. Trimble, Jr., and Alonzo P. Wilson, Alexandria, for defendant-appellee.
Richard S. Vale, Metairie, for intervenor-appellee.
Before CULPEPPER, SWIFT and DOUCET, Judges.
DOUCET, Judge.
This personal injury suit was brought by Gary L. Ewing and his wife, Janet C. Ewing, as a result of an automobile accident, which took place on September 20, 1978. Gary Ewing was driving a 1978 Ford automobile owned by Lewis Roy Motors, Inc. of Marksville, Louisiana. He was acting within the course and scope of his employment by Walker Bait Farm, and his wife was a guest passenger in the automobile. They were proceeding in a southerly direction on Louisiana Highway 1 when they collided with a 1973 Buick owned and driven by Bernard C. Sanson. Sanson had been traveling in an easterly direction on Louisiana Highway 457 and had failed to yield the right-of-way to Ewing by running a posted stop sign at the intersection of the two highways. Both automobiles were demolished, and Mr. and Mrs. Ewing sustained multiple injuries. They were removed from the scene by ambulance and taken to a local hospital for treatment.
This suit followed in which numerous defendants were named through seven supplemental and amending petitions. As the suit *851 progressed, some of the defendants were dismissed. Among those dismissed was United States Fidelity and Guaranty Company (hereinafter referred to as U.S.F.&G.), the insurer of the Ewings' personal automobile, which was not involved in the accident. U.S.F.&G. was dismissed when it paid the Ewings $5,000.00 under the uninsured motorist provision of the policy that it had issued to them. The defendants that remained when the suit was tried were:
1) Bernard C. Sanson;
2) Commercial Union Insurance Company (hereinafter referred to as Commercial Union), Sanson's liability insurer;
3) Hartford Accident & Indemnity Company (hereinafter referred to as Hartford), Lewis Roy Motors' liability insurer; and
4) Employers Mutual Liability Insurance Company of Wisconsin (hereinafter referred to as Employers), Walker Bait Farm's automobile liability and workmen's compensation insurer.
Employers intervened, seeking the recovery of $2,386.73 in workmen's compensation benefits, which it paid to Gary Ewing as a result of injuries that he sustained in the accident. On October 11, 1979, eight days prior to the trial, Commercial Union paid $5,295.00 to each plaintiff, exhausting the limits of the policy that it had issued to Sanson.
After the trial, judgment was rendered in favor of Gary Ewing and against Hartford and Sanson, in solido, in the amount of $20,000.00 for general damages, plus $12,-939.29 for past and future medical expenses, subject to a credit of $5,295.00, the amount paid by Commercial Union. Judgment was also rendered in favor of Janet Ewing and against Hartford and Sanson, in solido, in the amount of $42,000 for general damages, subject to a credit of $5,295.00. The judgment declares that its enforcement against Sanson is limited to a total of $4,000.00, $2,000.00 to each plaintiff. It also states that the liability of Commercial Union is limited to the $10,590.00 that it paid to the plaintiffs prior to the trial and that the judgment against Sanson is in addition to that amount. The Ewings' demands against Employers were dismissed. All pre-trial costs were taxed to Commercial Union and Hartford in the amount of one-half each, and all trial costs were taxed to Hartford.
Hartford appealed suspensively. The Ewings appealed devolutively and answered Hartford's appeal, seeking an increase in the amounts awarded to them and judgment against Employers in the event that the judgment against Hartford is reversed. They later amended their answer to Hartford's appeal, seeking penalties and attorney's fees for the defendant insurers' failure to pay their medical claims. Sanson also answered Hartford's appeal, asking that the amount of the judgment against him be reduced to $500.00 for each plaintiff, and that the judgment be modified to provide that he is individually liable for that amount only, rather than solidarily liable with Hartford. Commercial Union joined in Sanson's answer, asking that the judgment be modified to make no award whatsoever against it, or in the alternative, to provide that it is only liable for its proportionate share of the costs.

QUANTUM
The evidence concerning the plaintiffs' injuries was succinctly summarized by the trial judge in his written reasons for judgment. We adopt his summary as follows:
"The record reflects that upon admission to the hospital both plaintiffs were complaining of painful headaches and were diagnosed as having cerebral concussions. It was also obvious to the admitting doctors that both plaintiffs had received multiple abrasions and lacerations over their entire body from the accident.
"Mr. Ewing remained in the hospital for nine days. He was treated for a puncture wound in his right bicep and for a soft tissue injury to his right elbow (which required surgery October 23, 1979, one week after evidence was heard in this case). He later complained of low back pain which should subside with time and *852 of neck pain which was diagnosed as an acute cervical sprain which should subside with time but with no disc involvement. All the tests on Mr. Ewing were negative as to any neurological damage. Because of these injuries, Mr. Ewing was unable to work for two months. He testified that when he returned to work, he was in much pain because of the heavy manual labor required. He has had to restrict some of his recreational activities and continues, upon exertion, to have pain from accident-related injuries. Headaches have persisted since the accident but with decreasing frequency.
* * * * * *
"Mrs. Ewing also stayed in the hospital for nine days. Upon admission a large cut in her upper lip was sutured and this has left a small disfiguring bump on her upper lip. She had a cut by her right eye which was also sutured but she still complains of blurred vision in that eye when driving. She also testified of photophobia and headaches up to the time of trial. She sustained neck pain which, when examined, showed `severe tenderness with sever muscle spasms.' This was later diagnosed by her orthopedist as `acute cervical strain' which is worsening and could become chronic but not requiring surgery without further testing. She has also testified to a tingling feeling down her leg and of back pain in her lumbar region which has been diagnosed as a `sprain with possible disc involvement.' Mrs. Ewing also fractured her jaw and sustained fractures and loosening of three of her teeth, resulting in much pain and tenderness. She was seen in the hospital by a dentist who, after her discharge, performed root canal work and general dentistry treatment. Future root canal work has been prescribed which could result in her jaws being wired for eight weeks.
"Because of Mrs. Ewing's physical condition since this accident, she has gained weight because of emotional frustration which has affected her life at home and at work. Psychiatric care has been recommended for mild to moderate depression by her neurosurgeon and evaluating psychologist.
"Mrs. Ewing is still being treated by Dr. John J. McCutchen, a neurosurgeon. He feels that there may be disc involvement but can't testify to any medical certainty until a myelogram or discogram is performed."
The trial judge based his awards of $20,-000.00 to Gary Ewing and $42,000.00 to Janet Ewing on that evidence. On appeal, Hartford argues that the awards are excessive, while the Ewings argue that they are insufficient. In addition, Hartford argues that the preponderance of the evidence does not support the trial judge's award of $3,000.00 for Mrs. Ewing's future medical expenses.
Before an appellate court can disturb a trial court's award of general damages, the record must clearly reveal that the trier of fact abused its "much discretion" under LSA-C.C. Art. 1493. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977); Reck v. Stevens, 373 So.2d 498 (La. 1979). After carefully examining all of the evidence in the record, we cannot agree that the awards were either so excessive or so insufficient that they constituted an abuse of the trial judge's discretion. We are therefore constrained to affirm the awards, and we find it unnecessary to discuss the numerous cases cited by the parties in their briefs. A detailed discussion of prior awards would serve no purpose, since we have found that the trial judge's awards fairly compensate the plaintiffs under the circumstances of this particular case.
Regarding Mrs. Ewing's future medical expenses, Dr. Joseph Marks, an oral and maxillofacial surgeon, testified that she would have to undergo orthognathic surgery in the future to correct malocclusions, or defects in the way that her teeth meet. Dr. Marks was unable to determine the exact extent to which the malocclusions were caused by the accident, since he had not examined her prior to that time. He was certain that some of the malocclusions in the back of her mouth were pre-existing. *853 However, he was equally certain that some of them were a result of the accident.
Hartford argues that the plaintiffs have failed to prove that the surgery has been necessitated by the accident. We disagree. It is clear from Dr. Marks' testimony that the purpose of the surgery is to relieve the pain and suffering that Mrs. Ewing is experiencing as a result of the injuries that she sustained in the accident. The fact that the deformities of her teeth were to some unknown extent pre-existing does not alter the fact that her present need for surgery was precipitated by the trauma of the accident. We therefore find no error in the trial judge's inclusion of this item in making his award for future medical expenses.

LIABILITY OF HARTFORD AND EMPLOYERS
Hartford and Employers were named as defendants because the negligent driver, Sanson, was underinsured. As we noted earlier, Hartford is the liability insurer of Lewis Roy Motors, Inc., the owner of the automobile driven by Gary Ewing. Employers is the liability insurer of Ewing's employer, Walker Bait Farm. It insured a pickup truck furnished to Ewing by his employer, which was being serviced at the time of the accident. On appeal, both Hartford and Employers argue that they are not obligated to provide uninsured motorist protection under the circumstances of this case.
The trial judge's written reasons for judgment contain an excellent treatment of the coverage issue raised by Hartford. We fully agree with his conclusions, which we adopt, as follows:
The substantial issue for resolution is whether defendant Hartford's liability policy (P-8) provides UM coverage to plaintiffs. Hartford contends Lewis Roy orally rejected the uninsured motorist coverage as provided by R.S. 22:1406 D(1)(a), which provided at the time the policy was issued the following:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any major vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, and not less than the limits of the bodily injury liability provided by the policy, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided however, that the coverage required under this sub-section shall not be applicable where any insured named in the policy shall reject the coverage or select lower limits." (Emphasis added.)
This statute provides that the insured will have the same amount of UM coverage as liability coverage except when he "shall reject the coverage or select lower limits." Lewis Roy did not select lower limits but they do contend they orally rejected the UM coverage, so the issue is, was there a legal rejection of UM coverage at the time of issuance.
At the trial of this matter, Hartford did not produce evidence of any written rejection of UM coverage by Lewis Roy Motors but did produce evidence of an oral rejection by representatives of Lewis Roy Motors to agents of its insurance agency and contends that such evidence is sufficient to relieve Hartford of UM liability as required by the above statute.
This Court does not have to resolve the issue of the effect of Lewis Roy's oral rejection, because the Court finds that such a rejection had to be in writing and attached to the policy. The Court relies on R.S. 22:628, which provides:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance *854 by specific reference to another policy or written evidence of insurance."
This is the "entire contract policy" statute, the basic purpose of which is that the insured shall have in his possession at all times the entire evidence of the insurance contract. See Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La.1979).
In the present case, the insurance policy offered into evidence contained no provision whatsoever for UM coverage. Thus, the fact that the rejection of UM coverage was oral, would not seem to matter, since the rejection does not conflict with, modify, or extend any coverage expressly stated in the policy.
In re-examining the wording of R.S. 22:1406 D(1), however, we note that it mandates inclusion of uninsured motorist coverage in any automobile liability insurance issued for delivery in Louisiana. The coverage is required, but is inapplicable if rejected by the insured. Thus, the fact that the policy in this case contained no language regarding UM coverage, is of no moment; the compulsory requirements of the statute mean that uninsured motorist coverage must be read into the policy. Since the policy thus mandatorily provides UM coverage, rejection of such coverage should have been in writing, because rejection conflicted with the coverage. See LeBoyd v. Louisiana Transmission [sic] Company, 375 So.2d 749 (4th Cir. 1979).
Therefore, it is this Court's ruling that since there was no proof of a written rejection by Lewis Roy Motors to Hartford for UM coverage, Lewis Roy is considered to have UM coverage equal to their liability coverage under the policy, namely $100,000 per person/$300,000 per accident.
Having found that Hartford is liable to the plaintiffs for the above reasons, we do not reach the coverage issue raised by Employers. LSA-R.S. 22:1406 D(1)(c) provides that the uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary. Since the primary coverage provided by Hartford has not been exhausted, we need not decide whether excess coverage was available under the policy issued by Employers.

SANSON'S LIABILITY
In response to Sanson's plea of inability to pay, the trial court limited enforcement of the judgment against him to the sum of $4,000.00. However, the judgment also provides that he is solidarily bound with Hartford. On appeal, Sanson requests that the judgment be amended to reduce his liability to the sum of $1,000.00 and to provide that it is separate from the liability of Hartford.
Sanson argues that he and Hartford are not solidary obligors because Hartford does not have the right to seek contribution from him. See Neimann v. Travelers Insurance Company, 368 So.2d 1003 (La.1979). The existence of a solidary obligation does not depend on whether a co-obligor has the right to seek contribution, however. It is well settled that an insured and his liability insurer are solidarily liable, despite the fact that the insurer has no right of contribution. Stansbury v. Hover, 366 So.2d 918 (La.App. 1st Cir. 1978).
In view of the fact that Sanson and Hartford are solidary co-obligors, we conclude that the trial court erred in considering evidence of Sanson's inability to pay. Where there are solvent co-obligors from which the plaintiff can recover, evidence of an insolvent co-obligor's inability to pay may not be considered at the trial on the merits of the plaintiff's claim. Daniels v. Conn, 382 So.2d 945 (La.1980); McGrew v. State Farm Mutual Automobile Insurance Company, 385 So.2d 1276 (La.App. 3rd Cir. 1980). Sanson's request for a reduction of his liability under the "inability to pay" doctrine is therefore denied, and the judgment is amended to delete the limitation on its enforcement against him.

COMMERCIAL UNION'S REQUESTS
As we noted earlier, Commercial Union paid its policy limits to the plaintiffs eight days before the trial. The trial judge concluded that under those circumstances, *855 it should be held liable for half of the pre-trial costs. We find no error in that conclusion. Nor do we find any error in the trial judge's reference to Commercial Union in the judgment. The judgment clearly states that Commercial Union's liability is limited to those amounts that it paid prior to trial. By doing so, it merely clarifies Commercial Union's position, and it does not provide any basis for enforcement of the judgment against it.
For the above and foregoing reasons, the judgment of the trial court is amended, and as amended, affirmed.
Paragraphs one and two of the judgment are recast to read as follows:
"ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Gary L. Ewing and against Hartford Accident & Indemnity Company and Bernard C. Sanson, Jr., in solido, in the sum of $32,-939.29, together with legal interest from date of judicial demand until paid in full, on all sums, subject to a credit in the amount of $5,295.00 paid by Commercial Union Insurance Company on October 11, 1979, and it is further
ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Janet C. Ewing and against Hartford Accident & Indemnity Company and Bernard C. Sanson, Jr., in solido, in the full sum of $42,000.00, together with legal interest from date of judicial demand until paid in full, subject to a credit of $5,295.00 paid by Commercial Union Insurance Company on October 11, 1979, and it is further"
In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant, Hartford Accident & Indemnity Company.
AMENDED AND AFFIRMED.
SWIFT, J., concurs.