693 So.2d 876 (1997)
FARMERS-MERCHANTS BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
ST. KATHERINE INSURANCE COMPANY, et al., Defendants-Appellees.
Voyager Property and Casualty Insurance Company-Defendant-Appellant.
No. 96-1138.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
Rehearing Denied June 11, 1997.
*878 Allan Leland Durand, Lafayette, for Farmers-Merchant Bank & Trust Company.
Andrew Holleman Meyers, Lafayette, for St. Katherine Insurance Company, et al.
Mark E. Seamster, Hammond, for Voyager Property & Casualty Company.
George W. McHugh, Jr., St. Martinville, for Cecilia Lumber Company.
Aaron Jay Allen, Lafayette, for Pat's Waterfront Restaurant Inc.
Before COOKS and PETERS, JJ., and BABINEAUX,[1] J. Pro Tem.
COOKS, Judge.
This appeal concerns the interpretation of a contract of insurance issued by Voyager Property and Casualty Insurance Company to Farmers-Merchants Bank and Trust Company. For the following reasons, we affirm.

FACTS
Pat's Waterfront Restaurant, Inc., owned property on which it operated a restaurant in Henderson, Louisiana. The corporation was created by Patrick and Agnes Huval. The Huvals divorced in the early 1980's. As part of the community settlement, Agnes acquired full ownership of Pat's Waterfront Restaurant, Inc.
On October 3, 1987, Pat's Waterfront Restaurant was totally destroyed by fire. Farmers-Merchants Bank and Trust Company (Farmers) held two separate promissory notes, both executed by Pat's and both secured by mortgages on the restaurant. At the time of the fire there were two separate insurance policies covering the restaurant. The owners of the restaurant secured a policy of property and casualty insurance underwritten by the following insurance companies: St. Katherine Insurance Company, Evanston Insurance Company, Sphere Drake Insurance Company, P.L.C., River Thames Insurance Company, Ltd., English and American Insurance Company, Ltd., and Orion Insurance Company, P.L.C. (All hereafter referred to as the "St. Katherine Group"). Farmers was named as loss payee in this policy. Farmers also secured a policy of insurance on the restaurant initially from National Union Fire Insurance Company through July 31, 1987, and then from Voyager Property and Casualty Insurance Company (Voyager) effective August 1, 1987.
On several occasions during 1987, until the time of the fire, Pat's failed to timely pay premiums due on the policy of insurance it secured from the St. Katherine Group. As a result, several notices of cancellation were sent to Pat's and Farmers. On each occasion after receiving notice, Farmers secured and paid for separate coverage on the restaurant property to secure its mortgage. If Pat's paid the premium after the notice, but prior *879 to cancellation, a reinstatement notice was sent to Pat's and Farmers.
In August 1987, as a result of Pat's failure to pay its monthly premium, a notice of cancellation was sent to Pat's and Farmers informing them that the policy would be cancelled effective on August 17, 1987. After receipt of this notice, Farmers on August 14, 1987 requested mortgage security coverage on the restaurant property. Eventually, Pat's paid the premium prior to the cancellation date. However, Farmers did not receive notice of the payment or reinstatement of the policy. Consequently, Farmers did not cancel the mortgage security coverage provided by Voyager. On the date the restaurant was destroyed, Voyager's policy was in effect.
On March 14, 1988, Farmers filed suit to collect insurance proceeds against the "St. Katherine Group" as a listed lienholder in Pat's policy. Additionally, Farmers named Voyager as a defendant and claimed it also issued a "mortgage security" policy covering the restaurant on the date of the mishap. In late 1988, Pat's Waterfront Restaurant, Inc. intervened and claimed an interest in the insurance policies; as did another lienholder, Cecilia Lumber Company.
In January, 1989, the insurance defendants attempted to invoke a concursus proceeding by depositing into the registry of the district court a sum which they jointly believed was due any and all claimants. The district court granted Farmers' motion for summary judgment allowing removal of the funds, but did not absolve the insurers from further liability as prayed for by the claimants. Following an appeal, this court reversed the trial court's granting of the summary judgment. Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins. Co., 570 So.2d 1186 (La.App. 3 Cir.1990); Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins. Co., 570 So.2d 1189 (La.App. 3 Cir.1990).
On remand, Farmers filed an exception of no cause of action and the defendants moved to amend their concursus petition. The district court ruled in Farmers' favor and defendants again appealed unsuccessfully to this court. Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins., 91-830 (La.App. 3 Cir.1992), (Unpublished Opinion), 608 So.2d 300, writs denied, 612 So.2d 59, 60 (La.1993).
Voyager then sought and was granted leave to amend its answer to assert any affirmative defenses it had to honoring the policy's terms. By amended answer, Voyager alleged the policy should be reformed to incorporate the actual intent of the parties. Specifically, Voyager alleged Farmers had cancelled, in the past, the mortgage security coverage obtained from it on the restaurant property after receiving notice of payment and reinstatement of the St. Katherine Group's policy; and thus, the parties intended to bind Voyager only in the event the primary policy lapsed in coverage. Farmers applied for writs from the district court's ruling allowing Voyager to amend its answer and this court affirmed. Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins., 93-552 (La.App. 3 Cir. 3/9/94); 640 So.2d 353; writ denied, 94-841 (La.5/13/94); 641 So.2d 204.
In May, 1994, the St. Katherine Group settled with Farmers and the two intervenors (Pat's and Cecilia Lumber). However, the claimants could not agree on how to apportion the funds which were then placed in escrow pending trial.
After trial, judgment was rendered against Voyager, ordering it to pay the entire policy amount, as well as penalties and attorney fees. The district court did not decide, however, how the proceeds should be apportioned between the claimants, except it held Cecilia Lumber could not claim any proceeds from the Voyager policy.
Voyager filed this suspensive appeal and asserts the following assignments of error:
1. The district court erred in not reforming the insurance contract to conform to the principal motive of the parties.
2. The district court erred in finding the Voyager policy was specific insurance, rather than a blanket type of coverage.
3. The district court erred in finding the Valued Policy Law, La.R.S. 22:695A (repealed), applied to the Voyager policy.

*880 4. The district court erred in finding the Voyager policy was primary and not excess coverage.
5. The district court erred in assessing penalties and attorney fees against Voyager under La.R.S. 22:658.
6. The district court erred in determining the appropriate date to commence the running of judicial interest on the Voyager policy proceeds.

ANALYSIS

1. Reformation of the Insurance Contract
Voyager argues its policy was "on the risk" at the time of the fire as the result of a simple oversight or administrative error. The error resulted, it alleged, because Farmers somehow failed to timely receive the notice reinstating Pat's policy, a policy that in fact was never cancelled. Accordingly, Voyager contends the policy should be reformed to comply with the intent of the parties.
The trial court found the following facts were relevant in resolving this question:
1. Voyager issued the coverage, and collected the appropriate premium under the policy for the coverage.
2. [Farmers] never at any time had any written policies or procedures governing when [Farmers] would or would not take out coverage under its mortgage security policy on property on which it held mortgages.
3. [Farmers] never at any time had any written policies or procedures governing when [Farmers] would cancel such insurance coverage.
4. The Voyager insurance policy covering Pat's Water-front Restaurant was effective August 14, 1987, and prior to that time Pat's Waterfront Restaurant, Inc. (the owner of the restaurant) had filed for protection under the Bankruptcy Laws of the United States.
This court has consistently held in certain instances of negligence, mistake, error or fraud on the part of an agent or employee of an insurer, the insurance contract can be reformed to accord with the original intention of the parties. Bischoff v. Old Southern Life Ins. Co., 624 So.2d 979 (La.App. 3 Cir.1993), writ denied, 93-2739 (La.1/13/94); 631 So.2d 1162; Farmers-Merchants Bank & Trust Co. v. Employers Nat'l. Ins. Corp., 553 So.2d 1088 (La.App. 3 Cir. 1989), writ denied, 559 So.2d 141 (La.1990); Dowden v. Commonwealth Life Ins. Co., 407 So.2d 1355 (La.App. 3 Cir.1981). The party seeking reformation bears the burden of proving, by clear and convincing evidence, that a mutual mistake has occurred. Rougeau v. State Farm Mutual Automobile Ins. Co., 262 So.2d 803 (La.App. 3 Cir.1972); Many v. Hartford Accident & Indem. Co., 505 So.2d 929 (La.App. 2 Cir.1987); See also Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199 (5th Cir.1990).
Voyager's presented evidence that Farmers, in the past, cancelled security coverage on such mortgaged property once it received written proof that other sufficient coverage was in effect. It is undisputed that Farmers did not receive any written or verbal notice that Pat's policy was reinstated; and, Farmers did not decide to cancel the Voyager coverage before the fire.
Counsel for Farmers directs our attention to Thalsheimer v. Pacific Fire Ins. Co., 176 So. 326 (La.App.Orl.1937). In that case, the plaintiff sued to reform an insurance policy by seeking to extend the effective period. The plaintiff argued she would have contracted for the longer period had she known the purchase price was the same. The court refused to reform the contract, even though it noted plaintiff may well have bought the longer policy if she would have had the additional information. The court concluded "there [was] no mistake and plaintiff got what she bought." We find the facts in this case are similar to those presented in Thalsheimer. Farmers intended to purchase $325,000 mortgage security coverage from Voyager; and, Voyager intended to provide such coverage at the time the policy was issued. Although Farmers might have canceled the Voyager coverage once it received notice that Pat's policy was reinstated, it was not compelled to do so and on occasions it elected in the past not to cancel coverage on "troubled accounts." The mistake which *881 Voyager complains occurred in this case was not "mutual." Voyager cannot legally rely on reformation as a defense to the obligations it undertook on issuing the policy.

2-3. Type of Policy and Valued Policy Law
Voyager contends, in its second assignment of error, that the policy in question provided blanket coverage rather than specific coverage. If the Voyager policy was a blanket policy of insurance, the actual cash value of the property at the time of loss is the amount it must pay rather than the total face amount of the policy as required by La.R.S. 22:695A. Voyager also asserts in its third assignment of error that La.R.S. 22:695A, which sets forth what has been referred to as the "valued policy law," does not apply to its policy. The "valued policy law" requires insurers issuing fire policies to pay, in cases involving total losses, the face amount of the policy provided the insured is not found criminally at fault. Farmers argues because Voyager failed to plead that the policy provided only blanket coverage as an affirmative defense, its belated attempt to expand the pleadings and argue the issue now is not proper. We agree.
Voyager's original answer raised only one affirmative defense. Voyager alleged the policy it issued was for excess coverage only. Several years later, Voyager asked to amend its answer to raise additional affirmative defenses. The district court granted Voyager's request; and allowed it to plead "mutual mistake" as grounds to reform the contract of insurance. Voyager did not plead any other affirmative defenses to the action. Three days before trial, Voyager requested leave to file a third amended answer to the suit. Farmers filed a motion to strike, and the trial court agreed Voyager's request came too late.
La.Code Civ.P. art. 1005 provides all affirmative defenses shall be specifically pled in the answer. In the absence of such pleading, no proof can be offered in connection with that affirmative defense. Rider v. Fontenot, 463 So.2d 951 (La.App. 3 Cir.1985); Johnsa v. Edwards, 569 So.2d 547 (La.App. 4 Cir.1990), aff'd in part, rev'd in part, 582 So.2d 1280 (La.1991). Voyager argues since Farmers was prepared to meet this defense, its objection to the blanket policy evidence "should fall on deaf ears." We disagree. The trial court did not err in refusing to allow Voyager to raise additional affirmative defenses.
Voyager further argues the district court erred in finding the Valued Policy Law, La.R.S. 22:695A[2], applied to the Voyager policy. However, Voyager in its brief admits its policy falls within the letter of the statute, but asks this court not to apply the Valued Policy Law because the Legislature could not have intended to apply the law to this situation.
La.Civ.Code art. 9 provides "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.R.S. 22:695 is clear, and we will not engage in a search of legislative intent contrary to the mandate of La.Civ.Code art. 9.

4. Voyager Policy Primary or Excess?
Voyager contends the trial court erred in finding the Voyager policy provided primary and not excess coverage. We agree with the trial court's reasons on this issue and adopt them as our own:
With regard to the "excess clause" in the Voyager policy, the Valued Policy statute makes the following provision:
"Any clause ... which may be included in any policy of fire insurance ... contrary to the provisions of this section shall be null and void ..." LRS 22:695(D).
Since the "excess clause" in the Voyager policy would defeat the mandatory provisions of LRS 22:695(A) requiring payment of the full insured amount in the event of total destruction of the property, the excess clause must be considered null and void.

*882 Other Louisiana cases have refused to enforce various clauses in a fire insurance policy which would lead to payment of less than full face value in the event of a total loss. See, for example, Southern Produce Company v. American Insurance Company, 166 So.2d 59 (La.App. 4 Cir.), writ refused, 246 La. 863, 167 So.2d 675 (La. 1964). The Valued Policy law represents such a strong public policy that the Courts refuse to let insurers raise the defense of the extent of an insured's insurable interest, even though there were other provisions in the Insurance Code (LRS 22:614) which seemingly allowed the insurer to raise such a defense in all instances. See The Forge, Inc. v. Peerless Casualty Company, 131 So.2d 838 (La.App. 2 Cir.1961); Rigdon v. Marquet [sic] Casualty Co., 163 So.2d 442 (La.App.2 Cir.), writ denied, 246 La. 578, 165 So.2d 480 (1964); Southern Produce Company v. American Insurance Company, supra. In response to these cases, the legislature amended the Valued Policy law, adding subsection E, which specifically provided that the insurer may question the extent of the insurable interest under the Valued Policy law. Obviously the legislature agreed that the Valued Policy law did not permit such inquiries absent this amendment. These cases illustrate that the public policy behind the Valued Policy law is very strong and the statute is intended to be interpreted liberally in favor of the insured. See also McKenzie on Insurance, Section 318.
Even if the excess clause was not null and void, the St. Katherine's policy provides that it also is an "excess policy" (unless the other insurancehere Voyagerprovides that it is a pro-rata policy, which the Voyager policy does not.) Therefore, both the Voyager policy and the St. Katherine's policy would, by their terms, be "excess" policies. In such a case, the Courts of this State have held that two mutually exclusive "excess clauses" cancel each other out. Stansbury v. Hoover [sic], 366 So.2d 918 (La.App. 4[sic] Cir.1978); McKenzie on Insurance, Sec. 228.

5. Penalties & Attorney's Fees
Any property and casualty insurer who fails to pay a fire damage claim within sixty days of proof of loss and demand for payment is liable for a penalty in the amount of ten percent of the damages, together with all reasonable attorney's fees, if the failure to pay is either arbitrary, capricious, or without probable cause. La.R.S. 22:658(B)(1). Voyager did not make an unconditional tender to Farmers at any time; but merely refunded the premiums paid by the bank in August, 1994, some seven years after the fire.
The trial court noted the majority of the issues involved in this case were strictly legal in nature and concern insurance policy contract interpretation. The trial court quoted the following statement from the concurring/dissenting opinion of Judge Domengeaux in Paret v. Louisiana Health Service & Indem. Co., 366 So.2d 634 (La.App. 3 Cir.1978), writ denied, 369 So.2d 139 (La. 1979):
If the insurer bases its denial of benefits solely upon a particular interpretation of its policy, and the Court determines that the insurer's interpretation was incorrect, then penalties and attorney's fees should be awarded. If, however, the insurer bases its denial of benefits upon a reasonable construction of the facts of the case, and the Court gives another construction to the facts so as to award benefits, then, in that event, the insurer could be reasonable in its actions, and penalties and attorney's fees could be denied.
Voyager argues the allegations of arson in this matter prevent an award of penalties and attorney fees. We disagree. Under the Valued Policy Law arson could only serve as a defense to Farmers' claim if Farmers was involved in the arson. There is no evidence in the record to suggest any possible involvement by Farmers in any alleged arson.
We do not find the trial court erred in concluding that Voyager did not present any evidence showing it had a reasonable basis to believe Farmers' entire claim was unfounded. Yet, Voyager failed to make any tender, except for the late tender of premiums paid by Farmers. The trial court did not abuse its discretion in assessing penalties and attorney fees.

*883 6. Interest

Voyager argues the trial court erred in awarding judicial interest on the policy proceeds from the date of judicial demand. Voyager argues it did not owe any debt to Farmers as of the date of judicial demand because when suit was first filed the property in question was the subject of an arson investigation. However, Fire Marshall Lonnie Rogers testified the evidence he gathered did not even remotely suggest Farmers was involved in any way in causing the fire. Therefore, this assignment of error is without merit.
The trial court also awarded interest on penalties and attorney fees from the date of judgment. Farmers argues the trial court should have awarded interest on penalties and attorney fees from the date of judicial demand. However, Farmers did not appeal this portion of the trial court's judgment; and it did not answer Voyager's appeal. Farmers, thus, waived its right to seek relief on appeal. La.Code Civ.P. art. 2133.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant, Voyager Property and Casualty Insurance Company.
AFFIRMED.
NOTES
[1] Judge Allen Babineaux, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[2] This provision has since been repealed.